UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340



**WILLIAM J. MARTINI**
       **JUDGE**

# LETTER OPINION

December 3, 2009

Abraham S. Alter
Langton & Alter
2096 St. Georges Avenue
Rahway, NJ 07065
        *(Attorneys for Plaintiff)*

Karen G. Fiszer
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
        *(Attorneys for Defendant)*

        RE:    *Johnson v. Commissioner of Social Security*
                  Civil Action No. 08-4901 (WJM)

Dear Counsel:

        Plaintiff Myra Johnson ("Johnson") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI").  There was no oral argument.  Fed. R. Civ. P. 78.  For the following reasons, the Commissioner's decision is **AFFIRMED**.

1

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a 42 year old female suffering from severe cardiac, pulmonary, and renal impairments. (Pl. Cmplt. at 2). She was 38 at the time she first applied for SSI. (R. 20). She has a 9th grade education and has not worked since the 1980s. (R. 308, 10). She first sought medical care for her current ailments in October 2005. (R. 17). She alleges chest pains, dizziness, and shortness of breath. (R. 310). She takes 12 or 13 medications but has been non-compliant in the past. (R. 111, 166-67).

Due to Plaintiff's condition, she does not leave her home except to go to doctors' appointments. (R. 317). She alleges that she can only walk about half a block before she needs to rest for 10 to 15 minutes. (R. 312). Therefore, she spends most of her day sitting and watching television. (R. 310, 316). She has 10 children, several of whom visit her most afternoons to clean, bring her food, and take care of anything else she may need. (R. 111, 316). Plaintiff previously used both cocaine and heroin. (R. 317). She alleges that she is currently on methadone and has not used either cocaine or heroin in about 13 or 14 years. (*Id*.). However, two drug tests performed two weeks apart in October 2005 yielded a positive result for cocaine. (R. 191, 195, 207, 211).

Medical records show that Plaintiff was diagnosed with ischemic cardiomyopathy exacerbated by substance abuse, exacerbation of congestive heart failure, renal insufficiency, and hypertension in November 2005. (R. 110-113). Plaintiff sought emergency room care for complaints related to shortness of breath on four occasions in October and November 2005 but not since. (R. 166, 180, 204, 255). She also sought emergency room care on three additional occasions between December 2005 and June 2007, for alcohol intoxication, sunburn, and chest pains. (R. 237, 250, 262, 293). The results of an EKG following the visit for chest pain were within normal limits and the cardiac workup was negative. (R. 253). The attending physician concluded that the "nature of [Plaintiff's] pain" was "very atypical." (R. 294).

In February 2006, Dr. R.C. Patel, a consultative internist, diagnosed Plaintiff with hypertension, chest pain, chronic asthma, and a history of congestive heart failure in the past. (R. 227). He noted that Plaintiff was in no acute distress and walked unassisted with a normal gait. (R. 226-227). He found that her pulmonary function was completely within normal limits and that her complaints of chest pain were "atypical." (R. 18, 232).

In April 2006, a state-agency physician opined that Plaintiff could occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand and/ or walk up to six hours in an eight hour workday, sit approximately six hours in an eight hour workday, and had no restrictions on her ability to push or pull. (R. 276).

A February 2008 report from Dr. Mandeep Oberoi indicates that Plaintiff has been his patient since December 2005, and that she suffered from hypertension, hyperlipidemia, cardiomyopathy, cardiac arrhythmias, congestive heart failure, and renal insufficiency. (R. 288). He concluded that Plaintiff could not lift or walk for long periods and stated that he did not believe she was able to work. (R. 289). A March 2008 report by the same doctor stated that Plaintiff could carry 5 to 10 pounds, could stand and/or walk for 2 to 3 hours in an 8 hour workday, and, while the report said sitting was not affected by the impairment, could sit for 3 to 4 hours in an 8 hour workday. (R. 283-

286).

At a hearing in March 2008, vocational expert Rocco J. Meola was called to testify and answer questions posed by an Administrative Law Judge ("ALJ"). (R. 319). The ALJ asked the expert to consider a hypothetical individual of the same age and educational background as Plaintiff, with no past relevant work experience, with a residual functional capacity ("RFC") for lifting and carrying objects weighing up to ten pounds, sitting up to six hours, and standing and walking for up to two hours in an eight hour day, who could not be exposed to pulmonary irritants. (*Id*.). The expert concluded that such an individual would be able to perform the jobs of assembler, bench worker, document preparer, or sorter, jobs which exist in significant numbers in the regional economy. (R. 319-320). The ALJ then asked the expert if those same jobs would exist if the individual also had to take frequent breaks to catch her breath. (R. 320). The expert replied that if the person had to take frequent breaks, it would eliminate all such jobs. (*Id*.).

Plaintiff applied for SSI on November 18, 2005, alleging disability since October 1, 2005. Her claim was denied initially on April 12, 2006, and upon reconsideration on September 27, 2006. Plaintiff subsequently sought and obtained an administrative hearing, which was held on March 13, 2008 before Administrative Law Judge ("ALJ") Richard L. DeSteno. The ALJ engaged in the typical five step process for determining whether an individual is disabled pursuant to the Social Security Act. Her findings at each step were as follows: (1) Plaintiff has not engaged in substantial gainful activity since November 18, 2005, (2) Plaintiff has "severe impairments involving heart and renal disease and asthma," (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404 that result in a presumption of disability, (4) Plaintiff has the RFC to perform sedentary work with environmental limitations and has no qualifying prior relevant work experience in the past 15 years, and (5) there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 15-16, 20).

The Appeals Council affirmed the ALJ's decision on August 5, 2008. Plaintiff appealed to the District Court, filing a complaint on October 2, 2008. Defendant answered the complaint on August 3, 2008. Plaintiff then filed a brief with this Court on July 2, 2009, arguing that "substantial evidence exists in the administrative record to support a finding of disability."[1] (Pl. Br. at 1). Specifically, Plaintiff alleges that (1) the ALJ was biased against Plaintiff's attorney, (2) the ALJ failed to combine Plaintiff's impairments when considering medical equivalence and the C.F.R. listing at Step 3, (3) the ALJ's determination of RFC at Step 4 is not supported by substantial evidence, (4) the ALJ did not properly consider Plaintiff's subjective complaints of pain, and (5) the

---

[1] At the outset, it should be noted that Plaintiff, who is represented by counsel, has failed to comply with the Local Rules in filing her brief. Plaintiff's brief was filed four months late. Additionally, the brief is 46 pages long,. The Local Rules mandate that leave of the Court must be obtained to file any brief longer than 40 pages. Such leave was neither granted nor even requested. Finally, the brief does not contain a statement of facts with references to the administrative record, as required by L.R.9.1(a)(3)(c). While the Court will nevertheless consider Plaintiff's brief, counsel is cautioned to adhere to the rules in the future.

ALJ improperly questioned the vocational expert who testified at the hearing and that the hearing was designed as a pretense to deny Plaintiff benefits. These arguments will be addressed in turn.

## II. ANALYSIS
### A. Standard of Review

At the administrative level, a five step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires in Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the *Listing of Impairments*. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is deemed disable *per se* and the inquiry ends; if not, the ALJ moves on to Step Four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the ALJ decides whether, despite any severe impairment(s), the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

The district court reviews the ALJ's application of the law *de novo*. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986). On the other hand, factual findings are reviewed to determine whether they are supported by substantial evidence. *See Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). When substantial evidence for an ALJ's factual findings exists, this Court is bound by those determinations of the ALJ. *See id.* (citing 42 U.S. § 405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Srvcs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). If there is more than one rational interpretation of the evidence in the record, this Court must accept the conclusions of the ALJ and affirm his decision. *See Izzo v. Comm'r of Soc. Sec.*, 186 F. Appx. 280, 284 (3d Cir. 2006). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are

supported by substantial evidence.  *Schaudeck*, 181 F.3d at 431.

### B. Bias Allegations

Plaintiff's first argument is that ALJ DeSteno is biased against her attorney, Abraham S. Alter, and his law firm, Langton & Alter.  (Pl. Br. at 14).  Her brief contains detailed findings that allegedly document instances in which ALJ DeSteno exhibited bias or animus against clients represented by Langton & Alter.  (Pl. Br. at 14-27).  In each of these instances, the plaintiff allegedly subjected to bias had appealed ALJ DeSteno's decisions to the district court, obtained a remand order, and were thus appearing before DeSteno for a second time on the same matter.  The brief also alleges that ALJ DeSteno has never once changed his findings upon remand.  (Pl. Br. at 15).

However, Plaintiff's brief is devoid of any evidence that ALJ DeSteno exhibited bias against her in this specific case.  Whether Plaintiff is arguing for remand on the grounds of bias alone, or arguing for remand to a different ALJ should the Court find errors of law or fact contained elsewhere within the ALJ's opinion, both arguments fail.  Plaintiff does not even allege that the ALJ was biased in this case.  Alleged examples of bias displayed by ALJ DeSteno in prior cases involving different plaintiffs are not relevant here.  *See Mirabal v. Astrue*, No. 2:08-cv-01079-FSH (finding that "an ALJ's impartiality should not be judged by result or reputation or by statistics of how that judge has previously ruled").  Moreover, the examples of alleged bias to which Plaintiff cites primarily pertain to post-remand proceedings.  Because this case has not yet been before ALJ DeSteno in post-remand proceedings, they are inapposite.  To remand or remand to a different ALJ at this juncture is both unwarranted and premature.

### C. Consideration of Individual and Combined Impairments

Plaintiff alleges that at Step Three of the disability analysis, the ALJ erred by failing to explain his conclusion that Plaintiff's individual impairments did not meet or equal a C.F.R. listing qualifying her as presumptively disabled, and by failing to consider the combined effect of her impairments.  (Pl. Br. at 27-28, 30).  In particular, Plaintiff complains that the ALJ's opinion "merely recites the listing's provisions with a statement that plaintiff doesn't have them" but that "[n]o actual comparison is undertaken."  (Pl. Br. 30.)  Furthermore, Plaintiff alleges that the ALJ has engaged in a "blatant refusal… to **combine** all of plaintiff's medically substantiated conditions to determine medical equivalence" (emphasis in original).  (*Id.*)  However, Plaintiff's arguments are inaccurate and unfounded.

At Step Three, an ALJ must consider each of the claimant's individual conditions and determine whether they meet or equal any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 that give rise to a presumption of disability.  Additionally, the regulations state that if the claimant has "a combination of impairments, no one of which meets a listing . . . [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 404.1526(b)(3).  In order to find that a combination of impairments is medically equivalent to one in the listing, it must be "at least of equal medical significance." *Id.*  The ALJ will thus review the record and

determine whether the ailments in combination were equal to any of the enumerated impairments.  20 C.F.R. §§ 404.1520(d), 416.920(d).

The Third Circuit requires an ALJ to "set forth the reasons for his decision," so that the district court can conduct meaningful judicial review.  *See Burnett v. Comm'r of Social Security*, 220 F.3d 112, 119 (3d Cir. 2000).  In most circumstances, a conclusory decision denying disability at Step Three that is otherwise unsupported by substantial evidence and beyond meaningful judicial review warrants remand.  However, in reaching a decision, the ALJ is not required to use any particular language or follow any specific formula.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Moreover, multiple courts have upheld a Step Three determination that a claimant is not presumptively disabled based upon a less than detailed analysis of the combined impairments, as long as the rest of the Step Three analysis, including that of the individual impairments, was detailed, there was some consideration of the combined impairments, and the determination was based upon substantial evidence, or there was no harm to the claimant.  *See Branco v. Comm'r*, 2009 WL 2058866 (D.N.J.) (stating that the Court was unaware of any precedential authority requiring an ALJ to combine and compare the claimant's impairments); *Mirabal v. Comm'r*, No. 2:08-cv-01079 (D.N.J. 2009) (finding that an ALJ's failure to "explicitly state that he considered Plaintiff's impairments both individually and in combination… does not suggest that he failed to consider the combined effect;" finding further that an ALJ's detailed analysis of the individual impairments and conclusion that the claimant did not have "an impairment or combination of impairments" that met or equaled a listing was sufficient such that remand was not warranted); *see also Rivera v. Comm'r*, 164 Fed. Appx. 260, 263 (3d Cir. 2006) (affirming an ALJ's conclusory Step Three analysis because the error was "harmless").

Here, the ALJ's analysis and findings at Step Three comport with both the C.F.R. regulations and the standard established in *Burnett*.  Contrary to Plaintiff's assertions, the ALJ's opinion stated not only his conclusions regarding the individual impairments, but his reasoning as well.  For example, in determining that Plaintiff's cardiac impairments failed to meet or equal sections 4.02 or 4.04 of the listing of impairments, the ALJ explained that this was because Plaintiff did "not exhibit the diminished level of left ventricular ejection fraction and other dysfunction required by section 4.02 and persistent symptoms of heart failure which very seriously limit the ability to engage in the activities of daily living," among other reasons.  (R. 15).  The ALJ went through a similarly detailed analysis of why Plaintiff's two additional individual impairments, renal insufficiency and chronic asthma, also failed to meet or equal any listings.  (R. 15-16).  The ALJ also considered the question of whether Plaintiff's combined impairments met or equaled any listed impairment.  (R. 15).  Indeed, the ALJ's opinion twice noted the need to consider the combined impairments, ultimately finding that they did not meet the standard.  (R. 14, 15); *cf. Torres v. Comm'r*, 279 Fed. Appx. 149, 150 (3d Cir. 2008) (not precedential) (reversing an ALJ's decision because the opinion failed entirely to combine the claimant's impairments and also overstated his daily activities).  Finally, the evidentiary burden is on Plaintiff at the third step.  *See Poulos v. Comm'r*, 474 F.3d 88,

92 (3d Cir. 2007). However, Plaintiff has failed to identify which, if any, C.F.R. listing would be met or equaled by her combined impairments. As a result of this failure, it would appear that any alleged error made by the ALJ with respect to the combination analysis is harmless. Therefore, remand is not warranted at this stage.

### D.     Calculation of RFC

Plaintiff challenges the ALJ's determination of her RFC on two grounds: (1) the ALJ's opinion lacks evidentiary support, and (2) the opinion improperly rejected uncontradicted medical evidence by Plaintiff's treating physician. (Pl. Br. at 31, 35). Both contentions fail.

At Step Four, an ALJ must make specific findings of fact with respect to a claimant's RFC and must consider the entire case record. *Burnett*, 220 F.3d at 120; R. 16. He must also explain what evidence he chooses to credit and to what extent, and what evidence he does not credit and why. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (stating that the ALJ must provide "an expression of the evidence s/he considered which supports the result, but also some indication of the evidence that was rejected"); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects").

Here, the ALJ concluded at the fourth step that Plaintiff's RFC is for "lifting and carrying objects weighing up to ten pounds; sitting up to six hours, and standing and walking up to two hours in an eight hour day; not involving exposure to excessive pulmonary irritants." (R. 16). This RFC determination means the ALJ felt Plaintiff could "engage in sedentary work activity with environmental limitations."

ALJ DeSteno's conclusion that Plaintiff had the RFC to perform sedentary work is supported by substantial evidence. The ALJ discussed Plaintiff's medical history and hospital visits in detail. (R. 16-17). He summarized Plaintiff's testimony at the hearing. (*Id.*). He considered the conclusions from two different doctors that Plaintiff's complaints of chest pain were "atypical" and from multiple emergency room attending physicians that her asthma is "stable with treatment." (R. 18). He also considered Plaintiff's self-admitted non-compliance with medications, her history of substance abuse, and how these factors had exacerbated her condition, although he did not treat them as dispositive. (*Id.*). Furthermore, the ALJ's determination was consistent with the state-agency physician's opinion.[2] (R. 276). All of these factors led the ALJ to conclude that Plaintiff's "alleged cardiac, renal[,] and respiratory disorders" would not preclude her from all work activity and constitute substantial supporting evidence. (R. 16).

The ALJ's decision to discount the opinion of Dr. Oberoi, Plaintiff's treating physician, was deliberate and well-explained. While the Third Circuit recognizes the

---

[2] The state-agency physician opined that Plaintiff could occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand and/or walk up to six hours in an eight-hour workday, sit approximately six hours in an eight-hour workday, and had no restrictions on her ability to push or pull, which is consistent with the ALJ's finding that Plaintiff could engage in sedentary work. (R. 276).

significance of treating physicians' opinions and accords them great deference, this deference is not unlimited. *Plummer*, 186 F.3d at 429-431. The existence of contradictory medical evidence is a proper basis for rejecting the opinion of a treating physician, and supporting explanations or lack thereof permit accord of varying degrees of probative weight. *Id*. As the ALJ noted in the opinion, Dr. Oberoi's reports were internally inconsistent. (R. 19). He indicated that Plaintiff's sitting ability was not affected by her impairments yet also indicated a sitting limitation of 3-4 hours in the answer to the next question. (*Id*.; R. 283-286). Dr. Oberoi also assessed extensive limitations without providing any explanations except for a "few scratch notations that do not cite objective medical evidence that would support such limitations." (*Id*.). He also assessed additional limitations for which he provided no explanations at all. (*Id*.) The record also contains contradictory medical evidence submitted by the state agency physician. (R. 276, 283-285). This is sufficient to warrant discrediting the findings of the treating physician.

Contrary to Plaintiff's assertions, ALJ DeSteno's determination of her RFC is supported by substantial evidence, his failure to accord weight to the treating physician's opinion was proper, and he provided enough detail in his opinion about the evidence he chose to credit or discredit to allow for meaningful judicial review. The ALJ did not commit error at Step Four.

### E.     Subjective Pain Evaluation

Plaintiff asserts that ALJ DeSteno gave insufficient consideration to her subjective complaints of pain. (Pl. Br. at 38). This argument also fails. The regulations state that an evaluation of a complainant's symptoms, including pain or other subjective statements, is part of the disability evaluation. 20 C.F.R. § 416.929(a). Subjective complaints of pain must be given serious consideration. *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981). However, pain alone cannot be the basis for a finding of disability; the subjective complaints of pain must be accompanied by objective medical evidence showing the existence of a condition that reasonably could be expected to produce the alleged symptomalogy and support a finding of disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). It is the claimant's burden to prove that her subjective complaints of pain are substantiated by medical evidence. *See Pearson v. Barnhart*, 380 F.Supp.2d 496, 508 (D.N.J. 2005).

Here, the ALJ's opinion shows that he did consider Plaintiff's subjective complaints with respect to shortness of breath, fatigue, and weakness. (R. 19). However, the opinion further shows that the ALJ rejected these complaints because he found that they were not supported by the objective medical evidence and because he found them incredible. (*Id*.). He also found that Plaintiff herself was not credible, in large part because of her testimony in which she insisted she had not used cocaine in 13-14 years, which was contradicted by two positive tests for cocaine conducted in October 2005. (*Id*.). Moreover, despite having the burden at this stage, Plaintiff does not identify any of her disabling pain symptoms or point to any evidence that shows she suffers from disabling pain. Thus, this argument is unavailing.

8

### F. Vocational Expert

Plaintiff's final objection to the ALJ's determination is that the ALJ improperly questioned the Vocational Expert ("VE") in a manner that was calculated to yield a result unfavorable to Plaintiff. (Pl. Br. at 45). At Step Five of the disability analysis, an ALJ must present the testimony of a vocational expert, or other similar evidence, to meet his burden of establishing that there exist jobs in the national economy that a claimant with both exertional and non-exertional limitations can perform. *See Sykes v. Apfel*, 227 F.3d 259 (3d Cir. 2000). Here, at a hearing on March 13, 2008, ALJ DeSteno called upon VE Rocco J. Meola to provide testimony regarding Plaintiff's non-exertional limitations and the availability of jobs in the national economy that Plaintiff could perform. (R. 319).

According to Plaintiff, the ALJ developed a hypothetical for the VE that excluded her non-exertional limitation of needing to take frequent breaks during the workday, such that reliance on the VE's testimony was improper.[3] In fact, the ALJ posed multiple hypothetical situations to the VE, one of which did include this limitation. However, because the alleged need to take frequent breaks was based upon Plaintiff's subjective complaints and the opinion of Dr. Oberoi, the two sources of evidence the ALJ had previously chosen to disregard as unreliable, the ALJ did not rely upon the VE's answers to this hypothetical. Instead, the ALJ chose to rely upon the VE's responses to a different hypothetical that did not include the need to take frequent breaks. This decision is consistent with the ALJ's determination of Plaintiff's RFC and is supported by substantial evidence.

## III. CONCLUSION

For the reasons stated above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

[3] When the VE was asked about a hypothetical individual with a background and impairments similar to Plaintiff's who had to take frequent breaks during the workday, he concluded that there would be no relevant jobs in the national economy. However, when this non-exertional limitation was removed from the hypothetical, the ALJ concluded that there would be numerous jobs that Plaintiff could perform.